IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

United States of America

    v.                           Case No. 2:09-cr-119

Donald A. McGhee

OPINION AND ORDER

This matter is before the court on the defendant's motion to
suppress evidence obtained through searches following two separate
traffic stops on August 20, 2008, and October 8, 2008.  The court
held an evidentiary hearing on the motion on November 18, 2009.
Upon considering the evidence presented at the hearing, the court
makes the following findings of fact and conclusions of law.

I. Factual Findings

A. August 20, 2009 Arrest

On August 20, 2008, Officer Keith Barker and Sergeant (now
Lieutenant) Jennifer Knight of the City of Columbus, Ohio, Division
of Police were on patrol in a marked cruiser on the west side of
Columbus known as the Hilltop area.  The officers were involved in
the Summer Safety Initiative, a program designed to put extra
patrols in high crime areas such as the Hilltop, which was known
for a high level of illegal narcotics activity.  The officers were
part of a six-officer team with three cruisers.  The program
features included zero tolerance for any violations observed by the
officers.

At approximately 4:27 p.m., Lieutenant Knight observed a dark
Buick make a left turn without signaling in violation of Columbus

City Code §2131.14.[1]  The officers stopped the vehicle by activating the cruiser lights.  Officer Barker approached the vehicle on the driver's side, and Lieutenant Knight approached the passenger's side.  In the vehicle were the driver, identified as the defendant, an adult male passenger in the front passenger seat, and two children under the age of four in the rear of the vehicle.  Officer Barker asked defendant for his identification, and defendant stated that he did not have any identification with him, and further that he did not have a valid driver's license.  Driving without a valid license is an offense under Columbus City Code Section 2141.12(a)[2] and is a first degree misdemeanor for which an offender can be arrested.  Columbus City Code §2141.12(b)(2).

   At that point, Officer Barker removed defendant from the vehicle, patted him down, and placed him in the back of the cruiser while he used the computer system to verify defendant's identity and defendant's statement that he did not have a valid driver's

---

[1]Section 2131.14(a) provides in relevant part:

No person shall turn a vehicle or move right or left upon a street or highway ... without giving an appropriate signal in the manner hereinafter provided.

When required, a signal of intention to turn or move right or left shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning[.]

Columbus City Code §2131.14(a).

[2]Section 2141.12 provides:

No person, except those expressly exempted under Sections 4507.03, 4507.04, and 4507.05 of the Ohio Revised Code, shall operate any motor vehicle upon a street or highway or any public or private property used by the public for purposes of vehicular travel or parking in this City unless the person has a valid driver's license issued under Chapter 4507 of the Ohio Revised Code[.]  Columbus City Code §2141.12(A)(1).

Columbus City Code §2141.12(b)(1).

license.  Officer Barker confirmed that defendant did not have a
valid license, and placed him under arrest.  He removed defendant
from the cruiser and searched his person.  In defendant's pockets,
he found a handful of pills later determined to be Suboxodone, a
Schedule III narcotic, and a large sum of cash.  He informed
Lieutenant Knight that he had found money and pills.  After
determining that defendant would be arrested, the officers decided
to impound the vehicle.  Officer Barker called for a tow truck at
approximately 5:02 and prepared to impound the vehicle pursuant to
the policy statements in Columbus Police Division Directive 3.33
governing impounding and towing.  Directive 3.33 authorizes the
impoundment of a vehicle for any of the reasons stated in Columbus
City Code §2107.01.  Directive 3.33, §I(A)(1).  Section 2107.01
provides that an officer may impound "[a]ny vehicle operated by a
person without an operator's license[.]"  Columbus City Code
§2107.01(g).

After approaching the passenger side of the vehicle,
Lieutenant Knight observed the passenger in front and two small
children in the rear.  The passenger's legs were blocking her view
of the floor of the passenger seat, which was a safety concern.
She asked for the passenger's identification and learned that the
passenger did not have a driver's license.  She requested another
unit, and Officers Yonker and Miller responded to the scene.  She
asked Officer Yonker to remove the passenger while she went around
to the driver's side to talk with the children, who were scared.
She was concerned about getting the children out of the hot car as
soon as possible, because it was sunny and ninety degrees, and
there was no shade over the car.  Lieutenant Knight did not enter
the vehicle prior to the removal of the passenger, and stated she

would not do so due to safety concerns, including the possibility that the passenger might have a weapon or might grab a weapon from her belt.

After the passenger was removed from the car, Lieutenant Knight observed, from her vantage point outside the driver's door of the car, what appeared to be a jar of marijuana in plain view on the floor of the front passenger seat. At that point, defendant had been arrested, and she had already decided to impound the vehicle. Lieutenant Knight, a Columbus police officer with thirteen years experience, had seen marijuana hundreds of times, had participated in many drug arrests, including arrests involving marijuana, and had participated in training exercises involving the identification of controlled substances.

After the children were removed from the vehicle, Lieutenant Knight began an inventory search of the vehicle, and Officer Barker prepared the property inventory sheet. Lieutenant Knight recovered the jar of marijuana from the front passenger area. Behind the driver's seat, she found a large black backpack which was unzipped and open. In the backpack, which was within reach of anyone seated in the driver's seat and the children in the back seat, she found a loaded 9mm handgun, baggies of crack cocaine, and a baggie containing black tar heroin. The backpack also contained bills and other personal items belonging to defendant, including a digital camera with photographic images of large amounts of cash. Other evidence was recovered from the trunk of the vehicle and recorded on the inventory forms.

The defendant's mother arrived at the scene after the inventory was completed. She stated that it was her car, but that the defendant usually drove it, and she denied owning a gun.

Lieutenant Knight testified that she had no intention of releasing the vehicle to defendant's mother because of the drugs which had been found in the car, because of the zero tolerance policy of the Summer Safety Initiative, and because she was concerned that defendant's mother would give the car back to the defendant. The vehicle was impounded.

Defendant was charged with failure to signal, having no operator's license, possession of crack cocaine and heroine, and carrying a concealed weapon. The failure to signal charge was later dismissed, and defendant pleaded guilty to having no driver's license. The passenger was charged with possession of marijuana.

B. October 8, 2009 Arrest

On October 8, 2009, Sergeant Dan Kelso of the Whitehall, Ohio, Police Department was working patrol in a marked cruiser. He observed a Cadillac which had no license plate in the front, and a piece of cardboard where the rear license tag would normally be. The piece of cardboard was bent over so that he could not read the tag. He pulled the vehicle over for a violation of Whitehall Traffic Code §335.09.[3] As he approached the vehicle, he observed that the cardboard temporary tag was not attached by the top bolts, and was about to fall off. The driver was a female, identified as Jamie Vencill. Defendant was seated in the front passenger seat.

_____

[3]Section 335.09 provides in relevant part:

No person to whom a temporary license placard ... has been issued for the use of a motor vehicle under Ohio R.C. 4503.182, and no operator of that motor vehicle, shall fail to display the temporary license placard in plain view from the rear of the vehicle either in the rear window or on an external rear surface of the motor vehicle.... No temporary license placard ... shall be covered by any material that obstructs its visibility.

Whitehall Traffic Code §335.09(a). A violation of this section is a minor misdemeanor. Whitehall Traffic Code §335.09(b).

The stop occurred at approximately 9:00 a.m., and it was rainy and windy.

As Sergeant Kelso approached the driver's door and the driver rolled down the window, he noticed a strong odor of marijuana from two feet away. Sergeant Kelso was an experienced officer who had participated in over a hundred marijuana arrests, had seen marijuana over a thousand times, and was familiar with the scent of burning marijuana, having smelled it over a hundred times. Sergeant Kelso also observed smoke coming from a closed ashtray. As he asked the driver for license and registration, he observed that defendant appeared to be nervous. Sergeant Kelso asked about the marijuana, and defendant said that it was in the ashtray and handed him a marijuana cigar or blunt from the ashtray. Defendant stated that the vehicle was registered to his mother. Sergeant Kelso asked for the vehicle's registration, and when defendant opened the glove box to get it, a baggie containing what appeared to be black tar heroin almost popped out of the glove box. Although the fact that the bag almost popped out of the glove box was not in Sergeant Kelso's report, he testified that he specifically recalled this because it was a rare event. Sergeant Kelso had seen black tar heroin on approximately five occasions, and had also seen photographs of black tar heroin in reference materials, including a poster with photographs of controlled substances located in the station roll call room, which he saw every day. Defendant attempted to push the baggie back in the glove box out of view.

After his observation of illegal drugs and defendant's nervousness, Sergeant Kelso was concerned for his safety in light of his knowledge that persons in possession of hard drugs

frequently possessed weapons. He removed defendant from the vehicle and patted him down. He felt something hard and round in defendant's pocket and asked defendant what it was. Defendant responded that it was a marijuana grinder. Defendant's possession of such an item, drug paraphernalia, was a fourth degree misdemeanor offense for which defendant could be arrested. This device also had sharp points or knives inside which could potentially be used as a weapon. In defendant's left pocket, Sergeant Kelso found a large roll of cash. Sergeant Kelso inspected it to make sure that the cash was not rolled around anything which could be used as a weapon, such as a needle or razor blade. He had found such objects concealed in bundles of cash in the past. He then put the money back in defendant's pocket. Under the front passenger seat, Sergeant Kelso found a green plastic bag which contained powder cocaine, crack cocaine and heroin. He placed defendant under arrest for possession of crack cocaine and heroin, and searched defendant's person. Two small bags of marijuana were found in defendant's pocket. Sergeant Kelso stated that even if he had not found the drugs under the passenger seat, he would have arrested defendant for possession of the heroin in the glove box. Jamie Vencill was cited for failure to display a license tag, and she later pleaded guilty and paid this citation.

Defendant's testimony contradicted that of Sergeant Kelso in some respects. Defendant testified that at the time of the stop, he was smoking a Black and Mild cigar, not marijuana. He denied telling Sergeant Kelso that he was smoking a marijuana cigar. Defendant also stated that the car did not smell of marijuana, and that no smoke was coming from the ash tray. Defendant stated that there was no bag of heroin in the glove box, and that no baggie

fell out of the box. Defendant also testified that he attached the temporary tag to the rear of the car with two bolts at the top when his mother purchased the car. However, he could not remember when he last observed the condition of the tag and was unable to see it after the officer pulled the car over.

The court finds that the defendant's testimony is not credible. Defendant acknowledged that he has three felony convictions, at least one of which was for a drug offence. These convictions weigh against his credibility. Defendant also admitted that he and his friend, Ms. Vencill, were smoking marijuana in the car at 4:00 a.m. that morning, and that they were so high that they fell asleep in the car. He stated that when they were pulled over, he was still "kind of high." Thus, his testimony and recollections concerning his observations and statements at the time of the traffic stop are unreliable.

The fact that defendant admittedly smoked enough marijuana with Ms. Vencill in the car that morning to put them to sleep also supports Sergeant Kelso's testimony that he could smell marijuana in the car. Although the marijuana found in the car and on defendant's person was never sent to the lab for analysis, Sergeant Kelso had extensive experience with marijuana arrests and was familiar with how it looked and smelled. The court accepts Sergeant Kelso's testimony.

The court further notes that defendant's testimony that he attached the temporary tag using the two upper bolts at the time his mother purchased the car does not contradict Sergeant Kelso's testimony that the tag was bent over and about to fall off at the time Sergeant Kelso observed the vehicle. Defendant stated that he did not look at the tag at the time of the stop, and thus could not

describe its condition at that time.

## II. Conclusions of Law

### A. August 20, 2009 Arrest

Defendant does not contest that the officers had probable cause to issue a citation for failure to signal and to arrest him for having no driver's license.  So long as an officer has probable cause to believe that a traffic violation occurred, the stop of the vehicle is not unlawful.  <u>United States v. Bradshaw</u>, 102 F.3d 204, 210 (6th Cir. 1996).  "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that an offense has been committed."  <u>Henry v. United States</u>, 361 U.S. 98, 102 (1959).  "Whether probable cause exists depends on the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."  <u>Devenpeck v. Alford</u>, 543 U.S. 146, 152 (2004).  The officer may detain an individual in a police cruiser until the officer has finished making record radio checks and issuing a citation.  <u>United States v. Shank</u>, 543 F.3d 309, 314 (6th Cir. 2008); <u>Houston v. Clark County Sheriff Deputy John Does 1-5</u>, 174 F.3d 809-815 (6th Cir. 1999).

Here, the officers had probable cause to believe that defendant had committed the offenses of failure to signal and driving without a valid operator's license, and legally detained defendant in the cruiser prior to placing him under arrest.  Once Officer Barker verified that defendant had no valid driver's license, he acted properly in arresting the defendant.  He was also authorized to search defendant's person pursuant to that arrest.  An officer may conduct a warrantless full search of an arrestee's person incident to a lawful custodial arrest.  <u>United States v.</u>

<u>Robinson</u>, 414 U.S. 218, 245-35 (1973)(exception to the Fourth Amendment warrant requirement is based on the need to disarm the suspect in order to take him into custody and the need to preserve evidence on his person for later use at trial); <u>United States v. Montgomery</u>, 377 F.3d 582, 586 (6th Cir. 2004).

However, defendant argues that the search of his vehicle on August 20, 2008, insofar as it constituted a warrantless search pursuant to his arrest, was invalid under <u>Arizona v. Gant</u>, __ U.S. __, 129 S.Ct. 1710 (2009). In <u>Gant</u>, the Supreme Court narrowed the scope of the exception to the Fourth Amendment warrant requirement announced in <u>New York v. Belton</u>, 453 U.S. 454, 460 (1981), which held that when an officer lawfully arrests "the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile" and any containers therein. <u>Belton</u>, 453 U.S. 460.

The Supreme Court in <u>Gant</u> limited <u>Belton</u> as authorizing the search of a vehicle incident to a recent occupant's arrest only: 1) if the arrestee is within reaching distance of the passenger compartment at the time of the search; or 2) it is reasonable to believe the vehicle contains evidence of the offense of arrest. <u>Gant</u>, 129 S.Ct. at 1723. "When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." <u>Id</u>. at 1723-24.

In <u>Gant</u>, the search of the defendant's vehicle occurred after he had been handcuffed and placed in the patrol car. Since the officers had no reason to believe that evidence of the traffic offense for which he was arrested would be found in the vehicle, and no other exception to the warrant requirement applied, the

evidence was suppressed.  Defendant argues that the facts of his case are like the facts in <u>Gant</u>.  He contends since he was initially arrested for the offenses of failure to use a turn signal and driving without a license, the officers had no basis for believing that evidence of his traffic offenses would be found in the vehicle.  He further argues that since he had been removed from the vehicle and secured in the back seat of the cruiser, the officers could not search the vehicle incident to his arrest because the passenger compartment of his vehicle was not within his reach.

The government does not disagree with the argument that, under <u>Gant</u>, the search of the vehicle cannot be justified as a search pursuant to defendant's arrest.  However, there is authority for the proposition that <u>Gant</u> should not be applied retroactively to exclude the evidence in this case, which occurred prior to the decision in <u>Gant</u>.  Before <u>Gant</u>, <u>Belton</u> was interpreted as permitting the search of an automobile pursuant to the defendant's arrest even if the defendant has already been removed from the automobile and is under the control of the officer.  <u>See</u> <u>United States v. Hudgins</u>, 52 F.3d 115, 119 (6th Cir. 1995).  In <u>Herring v. United States</u>, __ U.S. __, 129 S.Ct. 695, 699 (2009), the Supreme Court recently stated that the exclusionary "rule is designed to safeguard Fourth amendment rights generally through its deterrent effect."  The Court further noted that the fact that a Fourth Amendment violation occurred does not necessarily mean that the exclusionary rule applies; the exclusionary rule is not an individual right and applies only where it results in appreciable deterrence.  <u>Id</u>. at 700.

The circuits which have addressed the issue of whether new

limitations on searches should be applied retroactively are divided. Compare United States v. Gonzales, 578 F.3d 1130, 1133 (9th Cir. 2009)(Gant applied retroactively) with United States v. Deitz, 577 F.3d 672, 687-88 (6th Cir. 2009)(rejecting defendant's Fourth Amendment argument concerning a warrantless search of his briefcase, noting that although the search violated Gant, the officers' conduct was lawful in 1998 when the stop occurred); United States v. McCane, 573 F.3d 1037, 1042-45 (10th Cir. 2009)(good faith exception applied to law enforcement actions rendered invalid under Gant which were previously lawful under circuit precedent); United States v. Jackson, 825 F.2d 853, 865-66 (5th Cir. 1987)(good faith exception applied in light of officers' reasonable reliance on prior circuit law regarding warrantless searches at checkpoint). This court concludes that even if the search is characterized as a search pursuant to defendant's arrest, the exclusionary rule should not be applied in this case, since, at the time of the events in question, the vehicle could have been legally be searched pursuant to defendant's arrest under the existing precedent of the Sixth Circuit, and there is no evidence that the officers acted in bad faith in performing the search.

Even if the exclusionary rule would apply to a search of the vehicle incident to defendant's arrest, the government argues that other exceptions to the Fourth Amendment warrant requirement apply to justify the warrantless searches of the defendant and his vehicle.

In this case, Lieutenant Knight directed Officer Yonker to remove the passenger from the vehicle. An officer making a traffic stop may order passengers to get out of the car pending completion of the stop. Maryland v. Wilson, 519 U.S. 408, 414 (1997); United

States v. Ruidiaz, 529 F.3d 25, 32 (1st Cir. 2008)(it is permissible for the officers to ask a passenger to step out of the vehicle as a security measure; the officers need not have an independent fear for their safety). Upon removal of the passenger, Lieutenant Knight observed a glass jar of what appeared to be marijuana in plain view.

The warrantless seizure of an object is permitted where the officer is lawfully positioned in a place from which the object can be plainly viewed, the incriminating character of the object is immediately apparent, and the officer has a lawful right of access to the object itself. Horton v. California, 496 U.S. 128, 136-37 (1990); United States v. Bishop, 338 F.3d 623, 626 (6th Cir. 2003). A motorist has no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers. Bradshaw, 102 F.3d at 211.

Lieutenant Knight observed the jar of marijuana in plain view from her lawful position outside the driver's door of the vehicle and the incriminating character of the marijuana was immediately apparent. Lieutenant Knight was familiar with the appearance of marijuana as a result of training in controlled substances and extensive experience as a patrol officer, including many arrests for marijuana offenses. She also had a lawful right of access to the jar of marijuana because, at that point, she had probable cause to believe that evidence of drug offenses would be found in the vehicle, thereby justifying a warrantless search under the "automobile exception" to the Fourth Amendment, and because, prior to seeing the marijuana, she had already decided to impound the vehicle, which would permit an inventory search.

13

Under the "automobile exception" to the Fourth Amendment's Warrant Clause, a warrantless search of an automobile is permissible if the search is supported by probable cause. <u>Maryland v. Dyson</u>, 527 U.S. 465, 466-67 (1999); <u>United States v. Ross</u>, 456 U.S. 798, 807-09 (1982)(officer's warrantless search of a vehicle does not violation the Fourth Amendment if the officer has probable cause to believe that the vehicle contains contraband). No special exigency is required to conduct a warrantless search of a vehicle when the car is mobile and the searching officer has probable cause to believe that the fruits of a crime may be present. <u>Dyson</u>, 527 U.S. at 466; <u>United States v. Graham</u>, 275 F.3d 490, 509 (6th Cir. 2001). Under the "automobile exception," police may "search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." <u>California v. Acevedo</u>, 500 U.S. 565, 580 (1991).

When Lieutenant Knight observed the marijuana in plain view, she had probable cause to believe that contraband would be found in the vehicle, particularly in light of the fact that Officer Barker had informed her that he had found a large amount of cash on defendant's person, suggesting that the occupants of the vehicle were involved in drug activity. Officer Barker testified that he informed Lieutenant Knight about the large amount of money he found on defendant's person, but in any event, probable cause may be established from the collective knowledge of the police rather than solely the knowledge of the officer who made the arrest. <u>See Thacker v. City of Columbus</u>, 328 F.3d 244, 256 (6th Cir. 2003); <u>Collins v. Nagle</u>, 892 F.2d 489, 495 (6th Cir. 1989).

The government argues that even if the search cannot be justified as a search pursuant to defendant's arrest or as a search

under the automobile exception, the inventory search exception also applies, and any evidence in the vehicle would have been inevitably discovered pursuant to the valid inventory search. Under the inevitable discovery rule, unlawfully obtained evidence is admissible if the government proves it would have been acquired through lawful means. United States v. Robinson, 390 F.3d 853, 871 (6th Cir. 2004)(where inventory search would have been conducted in accordance with written police policy, contents of vehicle admissible under doctrine of inevitable discovery); United States v. Kennedy, 61 F.3d 494, 498 (6th Cir. 1995).

The warrantless search of the vehicle was justified as an inventory search. It is well established that law enforcement officers may make a warrantless inventory search of a legitimately seized vehicle provided the inventory is conducted according to standardized criteria or established routine. United States v. Hurst, 228 F.3d 751, 758 (6th Cir. 2000). Inventory searches are a well-defined exception to the warrant requirement of the Fourth Amendment. See Colorado v. Bertine, 479 U.S. 367, 371-72 (1987)(officers may conduct inventory searches, including the contents of closed containers, so long as they do so pursuant to standardized procedures); South Dakota v. Opperman, 428 U.S. 364, 467-76 (1976). An inventory search may be "reasonable" under the Fourth Amendment even though it is not conducted pursuant to a warrant based upon probable cause. Bertine, 479 U.S. at 371.

Inventory searches "serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." Id. at 372. An inventory search may not be conducted for purposes of investigation and must be conducted according to

15

standard police procedures.  <u>Florida v. Wells</u>, 495 U.S. 1, 5 (1990); <u>United States v. Lumpkin</u>, 159 F.3d 983, 987 (6th Cir. 1998).  However, the fact that an officer suspects that contraband may be found does not defeat an otherwise proper inventory search. <u>United States v. Smith</u>, 510 F.3d 641, 651 (6th Cir. 2007); <u>Lumpkin</u>, 159 F.3d at 987.  In addition, the Fourth Amendment does not demand that police offer a motorist an alternative means of removing his vehicle that will avoid the need to tow it and conduct an inventory search.  <u>Bertine</u>, 479 U.S. at 373-74.

The evidence reveals that Columbus Police Department Directive 3.33 permits officers to impound a vehicle for any of the reasons listed in Columbus City Code §2107.01.  That section permits officers to impound "[a]ny vehicle operated by a person without an operator's license, or during period of suspension, cancellation, or revocation of such license."  Columbus City Code §2107.01(g). The vehicle in this case was impounded pursuant to the policies set forth in Directive 3.33.

Defendant argues that the search of the vehicle was not intended by Lieutenant Knight to be an inventory search, noting the statement in her report that the vehicle was searched pursuant to defendant's arrest.  Lieutenant Knight testified that this statement meant that the vehicle was being towed because defendant was arrested.  In addition, there is other evidence that the search was an inventory search.  Lieutenant Knight and Officer Barker testified that they decided to impound the vehicle.  Lieutenant Knight's report also referred to the fact that the vehicle was being impounded.  A tow truck was called, and Officer Barker prepared the inventory sheets listing the property which was found in the vehicle.  The reference in the report to a search incident

to arrest is insufficient to establish that this was the only basis for the search or that no inventory search occurred.

Defendant also argues that the inventory search was not conducted pursuant to the policies in the directive. He argues that § II, Procedures, which lists the responsibilities of the impounding personnel, requires that these duties be performed sequentially in the order they are listed. He notes that the first item listed is for the impounding personnel to request a wrecker through the Communications Bureau. Directive 3.33, § II(A)(1)(a). He then argues that, according to the inventory form, the wrecker was not requested until 5:02 p.m., and that the inventory search of the vehicle commenced before then.

First, it is not established by the evidence that the search of the vehicle in fact commenced before the tow truck was called. Since it was Officer Barker who called for the tow truck, Lieutenant Knight did not know if she began the search of the vehicle before or after that call. She did testify, however, that she had decided to impound the vehicle prior to beginning her search. Second, the defendant's interpretation of the Directive is unreasonable. There is no language in the Directive indicating that these duties must be performed in the precise order they are listed. In fact, since that section goes on to list the responsibilities of the police equipment operator, which may require interaction with the impounding personnel and some overlapping of their respective responsibilities, it would be unreasonable to construe these provisions as requiring that they be performed sequentially, or to expect the officers to interpret them in that manner. For example, the impounding personnel must secure the vehicle, and the police equipment operator must also assist in

securing the vehicle if requested to do so.  See § II (A)(1)(c) and (2)(a).  In addition, no evidence was produced that the policies have been interpreted or applied by other officers in the manner suggested by defendant.  There has been no showing that the officers in this case "acted in bad faith or for the sole purpose of investigation." Bertine, 479 U.S. at 372.  The court concludes that the officers did not violate the policies of the Division of Police in conducting the inventory search.[4]  The evidence in question was legally seized pursuant to a proper inventory search of defendant's vehicle.

This branch of defendant's motion to suppress is denied.

B. October 8, 2008 Arrest

Defendant's motion to suppress the evidence obtained following the stop of the vehicle in which he was a passenger on October 8, 2008, is based on his disagreement with the officer's version of the facts.  However, as stated above, this court has accepted Sergeant Kelso's version of the facts.

Defendant also argues that no violation of the Whitehall ordinance has been shown.  The Whitehall ordinance states: "No temporary license placard or windshield sticker shall be covered by any material that obstructs its visibility." §355.09(a). Defendant in essence argues that this language requires that the tag be covered by some extraneous material other than the tag

---

[4]Even if the Directive had been violated, the failure to abide by standardized procedures does not necessarily require the suppression of evidence in the absence of evidence suggesting that the police attempted to characterize the search as an inventory search what was in reality a simple investigatory search for incriminating evidence.  See United States v. Hall, 497 F.3d 846, 852 (8th Cir. 2007).  No such evidence has been presented here.  See also United States v. Tackett, 486 F.3d 230, 233-34 (6th Cir. 2007)(absent a federal constitution violation, the violation of a state law in conducting an inventory search is not a basis for the exclusion of evidence).

itself, and that there was no evidence that any such material covered the tag in this case. However, the ordinance reads "<u>any</u> material." (Emphasis supplied). The phrase "any material" is broad enough to include the placard itself. Sergeant Kelso testified that the top of the placard was not secured by the upper bolts, so that it was folded over, obscuring the rest of the tag.

Even assuming that the previous phrase is interpreted as requiring the tag to be obscured by some material other than itself, the Whitehall ordinance in question also requires in a separate sentence that the temporary license placard be displayed "in plain view" on the rear surface of the vehicle. §335.09(a). Sergeant Kelso testified that he stopped the vehicle because he was unable to read the temporary license tag attached to the back of the vehicle because it was folded over, obscuring the rest of the tag. The tag was therefore not "in plain view." The court finds that Sergeant Kelso had probable cause to stop the vehicle for a violation of §335.09(a).

As he approached the vehicle, Sergeant Kelso smelled the odor of marijuana. Sergeant Kelso was familiar with the odor of burning marijuana due to his past experience as a police officer. The Sixth Circuit has held that an officer's detection of the smell of marijuana in an automobile can, by itself, establish probable cause to search a vehicle. <u>See</u> <u>United States v. Foster</u>, 376 F.3d 577, 588 (6th Cir. 2004); <u>United States v. Elkins</u>, 300 F.3d 638, 659 (6th Cir. 2002). In addition, Sergeant Kelso observed smoke coming from the closed ashtray, and defendant told Sergeant Kelso that he had been smoking marijuana, and handed him a marijuana cigar or blunt from the ashtray. Defendant also appeared to be nervous. Sergeant Kelso observed, in plain view, a baggie containing what

appeared to be black tar heroin, with which he was also familiar, which almost fell out of the glove compartment when defendant reached in for the vehicle registration. In light of these observations, Sergeant Kelso had probable cause to believe that contraband would be found in the vehicle, and was authorized to search the vehicle pursuant to the "automobile exception" to the Fourth Amendment's warrant requirement. Ross, 456 U.S. at 807-09.

Sergeant Kelso was also authorized to remove defendant from the vehicle and to conduct a patdown for weapons. Wilson, 519 U.S. at 414. He was also permitted to pat down the defendant under the doctrine announced in Terry v. Ohio, 392 U.S. 1, 27 (1968), which allows an officer to conduct a "reasonable search for weapons ... where he has reason to believe that he is dealing with an armed and dangerous individual." The Terry doctrine applies even during the investigation of a minor misdemeanor such as the failure to display a temporary tag. See Arizona v. Johnson, __ U.S. __, 129 S.Ct. 781 (2009)(holding that officers could conduct a Terry patdown during a traffic stop where they reasonably suspected that an occupant of the vehicle was armed and dangerous, even though the vehicle was stopped for a violation which constituted a civil infraction warranting a citation.) If the officer detects a bulge in the initial frisk and he is unable to exclude the possibility that it might be a weapon, he may reach into the suspect's pocket and remove the item. United States v. Moore, 8 Fed.App'x 354, 356 (6th Cir. March 22, 2001).

In light of the presence of drugs in the vehicle and defendant's nervous demeanor, combined with the officer's knowledge that drug dealers frequently carry firearms, Sergeant Kelso was authorized to conduct a Terry patdown of the defendant. Sergeant

Kelso detected a hard object and asked defendant about it, and defendant stated it was a marijuana grinder, an illegal object for which defendant could be arrested, and which Sergeant Kelso stated could possibly be used as a weapon. Sergeant Kelso also found a large roll of cash, which he unrolled to check for concealed weapons, since he had previously found potential weapons such as needles and razor blades concealed in cash bundles.

Sergeant Kelso then searched under the passenger seat of the vehicle. Under <u>Michigan v. Long</u>, 463 U.S. 1032, 1049-51 (1983), an officer may search the areas of a vehicle where weapons may be found incident to the detention of the occupant of the vehicle if the officer possesses a reasonable belief that the suspect is dangerous and may gain immediate control of weapons in the vehicle. <u>See</u> <u>also</u> <u>Shank</u>, 543 F.3d at 314. Although <u>Gant</u> limited somewhat the officer's authority to engage in such protective searches if the defendant is handcuffed and confined in the back of a cruiser, and thus is not likely to break free of the officer's custody and gain immediate control of weapons in the vehicle, <u>Gant</u> did not preclude such protective sweeps where the defendant is not handcuffed and is being restrained by the officer a few feet away from the vehicle. <u>United States v. Davis</u>, 2009 WL 2446077 at *2 n. 2 (unreported) (6th Cir. Aug. 11, 2009).

In addition, even before Sergeant Kelso patted down the defendant and searched under the passenger seat of the vehicle, he had probable cause to arrest defendant for the possession of marijuana and heroin. Defendant was ultimately arrested at the scene for possession of heroin. Thus, the search of the vehicle was a legal search pursuant to defendant's arrest, since even under <u>Gant</u>, officers may still search a vehicle incident to arrest when

they have reason to believe that the vehicle contains evidence of the offense of arrest. Here, Officer Kelso had reason to believe that the vehicle would contain evidence of the offense of possession of heroin.

The search may precede a "formal arrest" so long as the officers had probable cause to arrest prior to the search and the arrest "followed quickly on the heels of the challenged search." Rawlings v. Kentucky, 448 U.S. 98, 111 (1980); see also Montgomery 377 F.3d at 586-88 (so long as officer had probable cause to arrest, no formal custodial arrest is necessary before a search incident to arrest can be made). In this case, even though Sergeant Kelso did not formally place defendant under arrest until after he had searched under the passenger seat, he had probable cause to arrest defendant before that search, and defendant was arrested soon after.

The search of the vehicle and any containers found in the vehicle was also valid as a search under the "automobile exception." See Acevedo, 500 U.S. at 580. After Sergeant Kelso smelled the odor of marijuana coming from the car, the defendant admitted smoking a marijuana cigar, and Sergeant Kelso observed the baggie with black tar heroin, he had probable cause to believe that contraband, namely illegal drugs, would be found in the car, and was authorized to search the vehicle under the "automobile exception."

The court concludes that the search of defendant's vehicle by Sergeant Kelso did not violate the Fourth Amendment.

III. Conclusion

In accordance with the foregoing, defendant's motion to suppress evidence is denied.

Date: November 20, 2009         s/James L. Graham
                                  James L. Graham
                                  United States District Judge